**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-295-DLB**

**FABRICIO DAVID PUERTA RAMIREZ** **PETITIONER**

**v.** **MEMORANDUM OPINION AND ORDER**

**MARC FIELDS, et al.** **RESPONDENTS**

* * * * * * * * * *

## I. INTRODUCTION

This matter is before the Court on Petitioner Fabricio David Puerta Ramirez's Petition for Writ of Habeas Corpus (Doc. # 1). For the following reasons, the Court will **deny** the Petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Ramirez is a native and citizen of Peru who first entered the United States without permission or inspection on or about February 22, 2023. (Doc. # 6-1 at 1-2). The following day, on February 23, 2023, the Department of Homeland Security ("DHS") served Ramirez with a Notice to Appear for removal proceedings before an immigration judge ("IJ"). (Doc. # 6-2).

On October 15, 2025, an IJ ordered Ramirez removed from the United States. (Doc. # 6-3). A little more than a month later, Ramirez appealed this decision to the Board of Immigration Appeals ("BIA"), where his case remains pending. (Doc. # 6-4). Ramirez's present detention began on July 8, 2026, when he was served with a "Warrant for Arrest of Alien" and taken into Immigration and Customs Enforcement ("ICE") custody. (Doc. #

6-5). Ramirez is currently detained at the Kenton County Detention Center in Covington, Kentucky. (Doc. # 1 at 1).

On July 15, 2026, Ramirez filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. # 1).[1] In his Petition, Ramirez argues that his initial arrest was unlawful because ICE lacked probable cause or a warrant. (*Id.* at 6). Additionally, Ramirez claims that his present detention is unlawful in light of his appeal before the BIA and the fact that he poses no danger or risk of flight. (*Id.*). On July 23, 2026, the Court directed Respondents[2] to respond to the Petition. (Doc. # 4). Respondents filed their Response on August 4, 2026, arguing that Ramirez is properly detained pursuant to 8 U.S.C. § 1226. (Doc. # 6 at 2). Ramirez filed his Reply on August 17, 2026. (Doc. # 7). Accordingly, this matter is ripe for the Court's review.

## III. ANALYSIS

At its core, the writ of habeas corpus provides "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). And this relief is available to "every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). A district court may grant a writ of habeas corpus to any person who shows that he is detained within the Court's jurisdiction in violation of the Constitution or the laws and treaties of the United States. 28 U.S.C. § 2241(c)(3). In making such a showing, "the petitioner 'has the burden of establishing his right to federal habeas relief and of proving

---

[1] In addition to his Petition, Ramirez filed a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 2). Because, for the reasons set forth herein, the Court denies Ramirez's Petition, Ramirez's Motion (*Id.*) is **denied as moot**.

[2] Ramirez names as Respondents Marc Fields, Jailer, Kenton County Detention Center, "ICE Chicago Field Office Director," Alejandro Mayorkas, former Secretary of DHS, and Merrick B. Garland, former Attorney General of the United States. (Doc. # 1 at 1).

all facts necessary to show a constitutional violation.'" *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003) (quoting *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001)). The Supreme Court has recognized that habeas relief extends to noncitizens. *See Rasul v. Bush*, 542 U.S. 466, 483 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States . . . Section 2241, by its terms, requires nothing more.").

Because Ramirez is not represented by counsel, the Court holds his Petition to a less stringent standard than formal pleadings drafted by a lawyer—"however inartfully pleaded" his allegations may be. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). "The allegations of a pro se habeas petition, 'though vague and conclusory, are entitled to a liberal construction.'" *Id.* at 85 (quoting *Burris v. United States*, 430 F.2d 399, 403 (7th Cir. 1970), *cert. denied*, 401 U.S. 921 (1971)). This construction "requires active interpretation in some cases to construe a pro se petition 'to encompass any allegations stating federal relief.'" *Id.* (quoting *White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976)).

In his Petition, Ramirez raises three grounds for habeas relief. First, he asks the Court to order his immediate release because, at the time of his arrest on July 8, 2026, ICE lacked probable cause or a warrant. (Doc. # 1 at 6). Second, Ramirez argues that Respondents lack the authority to detain him during the pendency of his appeal before the BIA. (*Id.*). Finally, Ramirez urges his release because he is "an individual who poses no danger or flight risk." (*Id.*). The Court will address each point in turn.

Ramirez's first claim fails. Even if Respondents seized Ramirez in violation of the Fourth Amendment, that is not a basis for habeas relief. *See Benavides v. Raycraft*, No.

1:26-cv-652, 2026 WL 972714, at *2 (W.D. Mich. Apr. 10, 2026) ("[A] defendant, including his identity or body, is properly before a court 'regardless of whether this information was obtained in violation of his Fourth Amendment rights.'") (quoting *United States v. Navarro-Diaz*, 420 F.3d 581, 588 (6th Cir. 2005)). More than a century ago, the Supreme Court recognized that, in the context of an analogous habeas challenge,

> [i]rregularities on the part of the government official prior to, or in connection with, the arrest would not necessarily invalidate later proceedings in all respects conformable to law. A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment.

*U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923) (quotations omitted). In his Petition, Ramirez makes the precise argument that the Supreme Court rejected in *Bilokumsky*. Thus, even if the Court accepted Ramirez's assertion that his arrest ran afoul of the Fourth Amendment, habeas relief would be improper as long as Respondents have a lawful basis to detain him. *See Salazar v. Noem*, No. 4:26-cv-3045, 2026 WL 458304, at *4 (D. Neb. Feb. 18, 2026) ("Generally speaking, an unlawful warrantless arrest isn't a get-out-of-jail-free card if a lawful basis to detain someone is subsequently established.") (citations omitted). In adjudicating Ramirez's Petition, the Court must determine whether Ramirez's *ongoing detention* is lawful. The propriety of his *initial detention* is another matter.

Respondents have the authority to detain Ramirez during the pendency of his removal proceedings. 8 U.S.C. § 1226 applies to noncitizens "arrested and detained pending a decision on whether the alien is to be removed from the United States." Under that statute, DHS may continue to detain the noncitizen during this period or, alternatively,

release the noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a). Conversely, once a noncitizen is subject to a final order of removal, his detention is governed by 8 U.S.C. § 1231. A final decision as to whether a noncitizen will be removed from the United States does not occur until an IJ issues an order of removal and that order becomes "administratively final." *See* 8 U.S.C. § 1231(a)(1)(B)(i). However, if an IJ orders a noncitizen removed and the noncitizen appeals that order to the BIA, the order will not become administratively final until the BIA resolves the appeal. *See Santillana v. Warden*, No. 1:26-cv-5396, 2026 WL 2186532, at *2 (E.D. Cal. July 29, 2026). Thus, where a noncitizen appeals an IJ's order of removal to the BIA, the noncitizen remains detained under § 1226. *See, e.g.*, *id.*; *Quintero v. Woosley*, No. 4:26-cv-227, 2026 WL 1587765, at *2 (W.D. Ky. June 3, 2026) ("When an appeal is filed, and throughout the duration of the appeal, 'the removal order is not yet administratively final.' Therefore, if [the petitioner's] appeal is pending, she is 'not yet subject to 8 U.S.C. § 1231 and instead remains detained under § 1226(a).'") (quoting *Alabdulaziz v. Tindall*, No. 3:26-cv-178, 2026 WL 973278, at *5 (W.D. Ky. Apr. 10, 2026)). Here, Ramirez has appealed the IJ's order of removal to the BIA. (Doc. # 1 at 2). This appeal remains pending. (*Id.*). Consequently, Ramirez is subject to the detention scheme set out in 8 U.S.C. § 1226(a), which permits Respondents to detain him or, alternatively, release him on bond in anticipation of the BIA's decision. Because Ramirez has failed to show that his present detention is unlawful, habeas relief is inappropriate.

Ramirez's second claim fares no better. Although he does not dispute Respondents' statutory authority to detain him, Ramirez argues that his present detention "violates [his] rights to due process." (Doc. # 1 at 6). Specifically, he argues that, by

detaining him during the pendency of his appeal to the BIA, Respondents have "create[ed] insurmountable logistical barriers that deny [him] the right to a fair and equitable defense." (Doc. # 7 at 4). Aside from this conclusory argument, Ramirez offers little support for his claim. On the contrary, the Supreme Court has clearly acknowledged that 8 U.S.C. § 1226(a) authorizes DHS to detain noncitizens—like Ramirez—"pending a decision on whether the alien is to be removed from the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (quoting 8 U.S.C. § 1226(a)).

A necessary corollary of this authority is Respondents' ability to continue the detention of noncitizens who choose to challenge an IJ's order of removal before the BIA. *See Quintero*, 2026 WL 1587765, at *2 (holding that § 1226(a) continued to govern a noncitizen's detention during her appeal to the BIA). Certainly, the Court acknowledges Ramirez's argument that his present detention may pose some logistical challenges during the resolution of his appeal. However, Ramirez has not demonstrated that his detention has "sabotaged [his] ability to defend [himself] within the legal system." (Doc. # 7 at 4). During Ramirez's detention at the Kenton County Detention Center, he has managed to file the instant Petition, which clearly sets forth his legal arguments and provides more than thirty pages of documentary evidence. (*See* Docs. # 1 through 1-4). Further, Ramirez was able to file a timely Reply to Respondents' Response (Doc. # 6), in which he ably addressed Respondents' arguments and reiterated his own. (*See generally* Doc. # 7). These actions belie his claim that his detention precludes his ability to participate in the resolution of his appeal before the BIA.

Finally, the Court must reject Ramirez's claim that his detention is unlawful because he has "no criminal record, [is] a peaceful person, and [has] always complied

with all immigration proceedings." (Doc. # 1 at 6). As discussed above, it is well-established that 8 U.S.C. § 1226(a) grants Respondents the authority to detain noncitizens pending a determination regarding their removal. However, § 1226(a) also allows noncitizens in Ramirez's position to request a bond hearing before an IJ who may grant release on bond of at least $1,500 or conditional parole. As Respondents note, Ramirez can request such a bond hearing at which he may argue that, in light of his personal circumstances, detention is not warranted. (Doc. # 6 at 3). Ramirez has made no such request. (*Id.*).

Respondents argue that Ramirez's failure to follow the Immigration and Nationality Act's procedures for requesting release on bond dooms the third claim in his Petition. (*Id.* at 6). Because Ramirez has failed to exhaust his administrative remedies by requesting a bond hearing under § 1226(a), Respondents maintain that Ramirez cannot seek the same relief in this Court. (*Id.*). The Court agrees.

In the absence of a statutorily imposed exhaustion requirement, courts may require the exhaustion of administrative remedies as a matter of "sound judicial discretion." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). This is known as "prudential exhaustion." *Torrealba v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025). Courts in the Sixth Circuit ordinarily require prudential exhaustion if

> (1) [a]gency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* at *9 (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Here, these factors counsel in favor of requiring exhaustion. First, the Immigration Court is well-equipped to conduct a bond hearing in accordance with § 1226(a). Indeed, Congress has specifically tasked IJs with adjudicating requests for bond. Second, relaxing this requirement would not only run counter to the Immigration and Nationality Act's framework but would also encourage individuals in Ramirez's position to bypass the Immigration Court. Finally, allowing the Immigration Court to re-examine its initial custody decision by conducting a custody redetermination hearing under § 1226(a) would enable the correction of erroneous custody decisions and preclude the need for judicial review.

Ramirez argues that "forcing [him] to go before an Immigration Judge right now is a futile exercise that does not repair the violation of [his] constitutional rights." (Doc. # 7 at 5). Why, he asks, "should [he] have to pay thousands of dollars for [his] liberty, when that liberty was illegally stolen from [him] in the first place?" (*Id.*). However, as discussed above, by seeking a writ of habeas corpus, Ramirez puts at issue Respondents' authority to detain him *presently*. To the extent he wishes to challenge his initial detention, a petition for writ of habeas corpus is an improper vehicle. And, although he declares that seeking bond under § 1226(a) would be "futile," the Court is not convinced. (*Id.*). Thus, the Court concludes that Ramirez must exhaust the administrative remedies available to him under § 1226(a) before seeking habeas relief in this Court.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS SO ORDERED** as follows:

(1) Ramirez's Petition for Writ of Habeas Corpus (Doc. # 1) is **DENIED**;

(2) Ramirez's Motion for Temporary Restraining Order (Doc. # 2) is **DENIED AS MOOT**; and

(3) This matter is hereby **DISMISSED** and **STRICKEN** from the Court's active docket.

This 20th day of August, 2026.

**Signed By:**
***David L. Bunning*** DB
**Chief United States District Judge**